IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.                                                                                           CASE NO. 1:99-cr-00029-MP-AK

KIER ELGIN RILEY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

    This matter is before the Court on Doc. 184, Motion to Vacate under 28 U.S.C. § 2255, by Kier Elgin Riley. The Government has filed its response, Doc. 187, and Defendant has filed a reply. Doc. 192. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

## BACKGROUND

    A federal grand jury returned an indictment against Defendant Kier Elgin Riley on April 28, 1999, charging him with one count of conspiring to distribute more than fifty grams of a substance containing cocaine base and more than five kilograms of a substance containing cocaine. Doc. 1. Defendant entered a plea of not guilty before Senior United States District Judge Maurice M. Paul on September 14, 1999. Doc. 9.

    Trial began on November 16, 2000, with Ms. Shannon Miller representing Defendant. Doc. 100. During the course of this trial, Defendant testified about his employment history from 1989 to 1999, about his arrest, and about previous counsel. Doc 79. Defendant denied selling

crack cocaine. *Id*. at 26. During cross-examination, Defendant admitted knowing all of the people who testified against him but denied knowing they were drug dealers. Doc. 80 at 18-19.

On November 20, 2000, the Court declared a mistrial due to the failure of the jury to reach a verdict. Doc. 102 at 41. The Court set the retrial for January 8, 2001.

On December 11, 2000, the government filed a Suggestion of Conflict of Interest, stating that in a telephone interview with a Government witness who had not been called in the first trial, Ms. Miller may have attempted to influence the witness,or she might be "put in a position at trial of cross-examining [the witness] on conversations he had with her" or the Government "may [be] require[d] [to call] Ms. Miller...as a witness in regard to those conversation." Doc. 75. On December 14, 2000, the Court held a hearing on the motion, at which time, Ms. Miller, through counsel, requested that she be allowed to withdraw based on the allegations related to her possible attempt to influence the witness. Doc. 168. According to Ms. Miller's counsel, her reason for requesting that the motion be granted was because she was "scared." Doc. 168. The Court questioned Defendant personally about whether he concurred in Miller's request, and after the Court continued the trial, Defendant agreed to Miller's withdrawal. *Id*.

On July 21, 2001, retrial began with Defendant being represented by Victor Africano. Doc. 137. During the jury instruction hearing, the Court denied Defendant's request for a buy/sell instruction. Doc. 152 at 13-15. The Court then afforded Mr. Africano "about 15 or 20 minutes to sit down with [his] client to make sure that we fully understand one another before [he made] what [he thought was] the appropriate announcement." *Id*. at 15. At that time, the Court recessed. Before the Government formally rested its case, Mr. Africano advised the Court that Defendant would not testify. Doc. 152 at 20. The Court therefore addressed Defendant on this issue:

| | |
|---|---|
| The Court: | Mr. Riley, you've heard your attorney advise this Court that you have decided not to testify in this proceeding, which is your right, but I need to explain to you a few things about that. |
| | The decision as to whether or not a defendant should testify is one that is personal to the defendant. No one else can make that decision but the defendant himself. Of course, in making that decision, he should listen to the advise of counsel and others with whom he has confidence to assist him in that endeavor. If you do not testify, the fact that you do not testify cannot be considered by the jury in any way in determining the issue of your guilt or innocence. I told them that during voir dire; they will be so instructed again when I read the instructions to them. |
| | If you elect to testify, then you would be subject to cross-examination just like any other witness, and your testimony would be considered by the jury the same as any other witness, that is, as to believability and so forth. |
| | If it is your decision not to testify and if the jury returns a verdict adverse to you, that is, a finding of guilty, you cannot later, either in this proceeding or on appeal or in any subsequent collateral proceeding, raise as an issue that you didn't testify because your lawyer wouldn't let you testify or for whatever other reasons; that is, that's waived forever. |
| | So, knowing that you have the right not to testify, that you have the right to testify, and knowing the consequences of electing not to testify, could you please state for the record whether you wish to testify in this proceeding or do not wish to testify? |
| Defendant: | I do not wish to testify. |
| The Court: | Do not? |
| Defendant: | Yes, sir. |

*Id*. at 20-21. The Court subsequently issued a written order on its denial of the buy/sell instruction, stating that because Defendant declined to testify, it did not "know if the Defendant is claiming that he sold drugs or did not sell drugs." Doc. 136. Furthermore, the instruction was

inappropriate because (1) there were "multiple transactions with dealers," not a single transaction, (2) the drug quantities were not consistent with quantities for personal use,(3) the time frame of the alleged conspiracy was lengthy, and (4) a buy/sell instruction would operate as a windfall to Defendant based on the evidence.  *Id*.

Upon submission to the jury, Defendant was found guilty as charged.  *Id*. at 95. When the jury was polled, the first two jurors answered, "Yes," and then the second and third nodded their heads affirmatively:

| | |
|---|---|
| Deputy Clerk: | Mr. Anthony, is this your verdict? |
| Juror: | (Nodding head) |
| Deputy Clerk: | Mr. Painter, is this your verdict? |
| The Court: | Have the record show that he nodded his head in the affirmative. |
| Juror: | Yes. |
| The Court: | If you would say yes.  Thank you. |
| Deputy Clerk: | I'm sorry.  Mr. Painter, is this your verdict? |
| Juror: | Yes. |

Doc. 152 at 96.

On May 28, 2002 the defendant, represented by Assistant Federal Public Defender Thomas Miller, was sentenced to 235 months imprisonment followed by five years supervised release.  Doc 173.

Defendant immediately filed a notice of appeal, arguing that his conviction should be reversed because of the denial of his motion for judgment of acquittal and because evidence was admitted about the fugitive status of his father, a co-defendant in this case.  Docs. 158 & 183.

On February 19, 2003, the Eleventh Circuit Court of Appeals affirmed, finding that no reversible error had been shown and that there was sufficient evidence to support the conviction.  Doc. 183.

On April 23, 2004, Defendant filed the instant Motion to Vacate, Set Aside or Correct Sentence.  Doc. 184.  As grounds for relief, Defendant argues that trial counsel was ineffective (1) for refusing to let him testify on his own behalf, thereby making him choose between his Constitutional right to remain silent and right to a jury instruction based on the "buyer/seller" relationship, (2) for failing to advise him of a plea offer, (3) for failing to request relief based on the safety valve provisions of 18 U.S.C. § 3353(f), and (4) for failing to object to the Court's jury polling directions.  Defendant also claims his appellate counsel was ineffective due to his failure to appeal (1)  "the apparent arm-twisting" of the Court when it refused a "buyer/seller" jury instruction after Defendant declined to testify in his own behalf, and (2) the alleged misconduct of the prosecutor in connection with Ms. Miller's withdrawal.  Doc. 184.

The government filed an answer to the motion to vacate on July 1, 2004.  Doc. 187.  In its answer, the Government maintains that Defendant's claim that he was forced not to testify is frivolous and barred by Defendant's own waiver in court.  Further, even when Defendant testified in his first trial, he was not given the buyer/seller instruction.  *Id*.  The Government denies making Defendant a plea offer, and Tom Miller, who represented Defendant at sentencing, signed an affidavit advising he never knew of such an offer.  *Id*. at Ex. B.  The Government also states that the request for safety valve relief pursuant to 18 U.S.C. § 3353(f) lacks merit because he did not fully disclose all information concerning the charged offense.  Further, the Government argues that the jury poll objection is frivolous because the Court's directions to the jury can be fairly read as asking jurors to answer audibly, not instructing them what to answer.  According to the Government, the court of appeals previously addressed the

issue of the "buyer/seller" instruction, stating there was enough evidence to support the jury's verdict and enough evidence to support an inference beyond the buyer/seller relationship. *See* Doc. 183 at 7. Finally, the government suggests the claim of prosecutorial misconduct lacks merit because Ms. Miller withdrew as counsel of her own accord, and Defendant agreed to this as long as he got a continuance, which he did. Doc. 187.

## **DISCUSSION**

Because Defendant's claims involve allegations that his counsel was ineffective, a consideration of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate before the Court examines each claim individually.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id.* at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*,

257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted).  "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).  There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001).  "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16.  "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*.  Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on.  The lawyer's strategy was course A.  And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A "reasonable probability is defined as a probability sufficient to undermine confidence in the

outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

    I.    Refusal to allow Defendant to testify.

A criminal defendant has a fundamental constitutional right to testify in his own behalf at trial. *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir. 1992). "This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." *Id*. The Court must analyze a defendant's allegation that his attorney violated his right to testify as an ineffective assistance of counsel claim. *Gallego v. United States*, 174 F.3d 1196, 1197 (11th Cir. 1999).

In this case, Defendant asks the Court to ignore the oral waiver to testify that he made in open court during his trial and to accept his allegations now that his attorney coerced and threatened him into waiving his constitutional rights. Mr. Africano is dead, and therefore, he cannot himself refute Defendant's charge that he threatened to withdraw from representing Defendant if he insisted on testifying and that Defendant would therefore be without counsel during his trial. The Government has, however, submitted the affidavit of Africano's co-chair during Defendant's trial, Christina Neito Johnson Seifert. Doc. 187, Ex. A. In her affidavit, Ms. Seifert states:

> As co-chair in this case, I had the opportunity to be present during many of the conversations which occurred between Mr. Riley and Mr. Africano during the course of the re-trial. I recall being present, at times, when discussions were had about whether or not Mr. Riley would take the stand during this re-trial. At no time did I ever witness Mr. Africano issue Mr. Riley a "mandate" that he would not take the stand. Rather, I saw Mr. Africano discuss the pros and cons of Mr. Riley taking the stand, and Mr. Riley elected not to exercise that right after discussing such with Mr. Africano. Further, I never heard Mr. Africano tell Mr. Riley that he would withdraw from his case if he took the stand. I found Mr. Africano to always act in a professional manner with Mr. Riley. Mr. Africano never coerced or threatened Mr. Riley to prevent him from taking the witness stand. As I recall, that decision rested with Mr. Riley, and he freely and voluntarily elected not to exercise that right.

*Id.* According to Defendant, because Ms. Seifert "did not and could not say" that "she was present during **every** [one] of the conversations which occurred between Mr. Riley and Mr. Africano," Doc. 192 (emphasis in original), she cannot "answer away [Defendant's] claim that Mr. Africano threatened him with withdrawing from the case." *Id.*

"Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). In this Court's view, Defendant's allegations, while specific, fly in the face of the record. The Court very clearly advised Defendant that the right to testify was personal to him and to him alone and that if he relinquished that right, he could never "raise as an issue that [he] didn't testify because [his] lawyer wouldn't let [him] testify...." Defendant unequivocally told the Court that he did not want to testify, and the Court apparently found nothing in Defendant's demeanor or manner to suggest that he was not being perfectly candid. Furthermore, while Ms. Seifert is not able to say she was a party to every conversation which Defendant had with Mr. Africano, her affidavit is consistent with Defendant's representations to the district judge during trial that he understood his right to testify on his own behalf and that he

did not want to testify. Defendant's assertion that he was coerced into waiving his right to testify because he was afraid he would be left without counsel and made to proceed with the case without the benefit of a continuance is flatly belied by the record of continuances and counsel changes in this case. *See* Docs. 14, 18, 22, 24, 30, 38, 43, 77, 78, 87, 110, 118, & 143. The Court denied only one continuance on legal grounds, Doc. 131, and appointed Defendant five different attorneys after three were relieved from further representation because of conflicts of interest and after Mr. Africano was allowed to withdraw before sentencing because he became seriously ill. Thus, although the Court would not likely have been very happy about the turn of events, if Defendant or his counsel had advised that a conflict had developed between the two of them which was unresolvable and which made further representation impossible, it is highly unlikely the Court would have denied Defendant a change of counsel and a continuance. To reach an opposite conclusion would require this Court to disregard the "strong presumption of verity" which "solemn declarations" made during trial carry, and in this Court's view, Defendant has not overcome that strong presumption under the circumstances. Furthermore, the only way Defendant would have been entitled to a buyer/seller instruction is if he not only had taken the stand but also had admitted selling drugs. He categorically denied that at his first trial when questioned by Ms. Miller, Doc. 79 at 26, and there is nothing before the Court which suggests he would have admitted being a seller at his retrial. As the Court found in its written order denying the instruction, the evidence did not otherwise support the instruction, and without an admission from Defendant that he was a crack dealer (an admission he does not even now suggest he would have made), the instruction would certainly have not been proper under the circumstances.

  II.  Failure to advise Defendant of plea offer.

  In this ground for relief, Defendant argues that trial counsel was ineffective for failing to

communicate to him the Government's plea offer of 8 to 15 years. According to Defendant, he learned of this plea offer from sentencing counsel. Mr. Miller denies that a plea offer was ever tendered by the Government during the time of his representation. Doc. 187, Ex. B.

While the Court recognizes the credibility dispute here between Defendant and counsel, it does not believe an evidentiary hearing is required. The Government denies making such an offer to Defendant, and this Court has no hesitation in stating that it does not know of any recent plea offer by the Government that made such a guarantee. Rather, the Government, in making a plea offer in this District, never guarantees a specific sentence, since it has absolutely no control over the length of a defendant's sentence, that being a matter left entirely to the discretion of the sentencing judge. The only thing that the Government can do is advise the Court of a cooperating defendant's substantial assistance and then recommend that the Court consider that in imposing sentence. While Defendant is correct that if he had accepted responsibility for his actions and pled guilty and if he had provided substantial assistance to the Government, he most likely would have faced a much lighter sentence than the one he received, the Court does not find his assertions credible in the face of what the Court knows would be against standard operating procedures in this Court.

    III.    Failure to request "safety valve" relief.

To qualify for relief pursuant to the "safety valve" provision of 18 U.S.C. § 3553(f), a defendant must, *inter alia*, "truthfully provide the government with all information and evidence he has concerning the offense." *United States v. Suarez O'Neill*, 2006 WL 1153748, at *3 (11th Cir. May 2, 2006). This is a "tell-all" provision and places an affirmative responsibility on the defendant to "truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct." *United States v. Johnson*, 375 F.3d 1300, 1302 (11th

Cir. 2004). "[L]ies and omissions do not, as a matter of law, disqualify a defendant from safety-valve relief so long as the defendant makes a complete and truthful proffer not later than the commencement of the sentencing hearing." *United States v. Gheorghiu*, 2006 WL 1049377, at *2 (11th Cir. Apr. 21, 2006).

In this case, Defendant maintains that counsel was ineffective for failing to request safety valve relief on Defendant's behalf. According to Defendant, his attorney at sentencing "went forward and admitted certain facts" which incriminated him and provided information as envisioned by the statute, and therefore, he should have invoked the safety-valve provision. The only statement by counsel which approaches an admission is related in the Presentence Report in the probation officer's consideration of counsel's objections: "The defendant...objects to Paragraph 11...and...states that Hicks was his competitor and he never had any dealings with Hicks." While this may be a form of admission, it is consistent with the testimony at trial and hardly approaches the kind of truthful disclosure of all evidence and information required by § 3553(f). The other two statements regarding "alleged quantities" and alleged distribution activities absolutely do not reach the level of telling all, and there is no indication from Defendant that he ever advised his attorney that he wanted to make a "request of debriefing." Furthermore, even if counsel should have requested safety valve relief, there is no likelihood that the Court would have found these statements sufficiently complete and truthful to warrant relief, and thus, Defendant was not prejudiced by counsel's failure to make the request.

IV.     Failure to object to Court's jury polling directions.

In this claim, Defendant charges that counsel was ineffective for failing to object to the Court's manner of polling the jury when it returned its verdict. More specifically, Defendant charges that the Court improperly instructed the jurors to answer affirmatively when asked about

the verdict and that "prejudice is apparent because [he] had once had a hung jury and could have had another one had there not been an error of this Court suggesting an answer for the jury."

When read out of context, the Court's direction, "If you would say yes. Thank you," could appear to be a suggestion to answer affirmatively to the question, "Is this your verdict," regardless of whether that was the case. However, it is clear the verdict form said, "We, the jury, unanimously return the following verdict....Guilty." Doc. 152 at 95. The Court then explained:

> Ladies and gentlemen, I'm going to ask the clerk to poll the jury, and that simply means she is going to call your name. And when she does, if you would answer audibly if this is in fact your own individual verdict as well as the collective verdict of this jury.

*Id*. at 95-96. When the Court directed the jury to "say yes," it was merely explaining to the jurors, after two had nodded their heads, they needed to show their agreement with the verdict orally, not physically. There can be no question of the Court's meaning, and counsel was not ineffective for failing to make a frivolous objection.

> V. Failure to appeal Court's "apparent arm-twisting" when it refused "buyer/seller" jury instruction after Defendant declined to testify in his own behalf.

In this claim of ineffective assistance of appellate counsel, Defendant maintains that counsel should have appealed the Court's refusal to give the buyer/seller instruction because the Court's ruling, in effect, forced him "to choose between two constitutional rights," the right to remain silent and the right to seek instruction on an affirmative defense. Counsel's decision not to appeal on this ground was not deficient. As the Court explained in its order denying the instruction, its decision did not completely hinge on Defendant's decision not to testify. Rather, the Court examined the other evidence in the case, including the amount of drugs and the number of transactions and dealers involved and the lengthy time frame of the alleged conspiracy. These matters militated against the giving of the instruction even without evidence from Defendant that

he did or did not sell crack.  The trial judge is given wide discretion in fashioning jury instructions as long as they accurately reflect the law.  *United States v. Starke*, 62 F.3d 1374, 1380 (1995).  The refusal to give the buyer/seller instruction was in accord with the law in this circuit and was not a meritorious issue for appeal.  Counsel therefore was not ineffective in failing to appeal on that ground.

> VI. Failure to appeal Government's alleged misconduct in connection with Ms. Miller's withdrawal.

Finally, Defendant charges that appellate counsel acted ineffectively when he did not appeal the Government's alleged misconduct in "scaring and intimidating" Ms. Miller into withdrawing from further representation of Defendant.  This was also not a meritorious appellate issue, and counsel was not ineffective for failing to raise the matter on appeal.  Ms. Miller acquiesced in her withdrawal from the case, which allowed the Court to grant the withdrawal without ruling on the merits of the Government's suggestion of conflict.  At the time that Ms. Miller withdrew and her attorney expressed her fear about the Government's allegation that she may have tried to influence a witness, she had been admitted to practice before this Court for only four years, and during that time, she had represented only about twenty criminal defendants.  It is therefore perfectly understandable why she would be "scared" about the Government's allegations.  The Government did not, however, force her to withdraw, and she chose that path rather than defending herself against the allegations or putting Defendant in jeopardy of changing counsel during trial if the Government's concerns came to fruition.  Most importantly, Defendant agreed to Ms. Miller's withdrawal on the condition that trial be continued.  In allowing Ms. Miller to withdraw, the Court granted a continuance, and indeed, Mr. Africano was given more than sufficient preparation time–over six months–before Defendant's case finally

came to trial.  There is absolutely no possibility that Defendant would have prevailed on this issue on appeal, and thus, he was not prejudiced by counsel's failure to raise the issue.

## CONCLUSION

Having found that none of Defendant's attorneys rendered ineffective assistance either before, during, or after trial, it is respectfully **RECOMMENDED** that Defendant's motion to vacate, Doc. 184, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 21st  day of June, 2006.

>   s/ A. KORNBLUM
>   ALLAN KORNBLUM
>   UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**